961 F.2d 220
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Edward G. SALAZAR, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 91-2173.
 United States Court of Appeals, Tenth Circuit.
 April 14, 1992.
 
 Before SEYMOUR and STEPHEN H. ANDERSON, Circuit Judges, and SAM,* District Judge.
 ORDER AND JUDGMENT**
 SEYMOUR, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Claimant Edward G. Salazar appeals from an order of the district court denying his Motion to Remand for a Rehearing of the Secretary's denial of his application for disability benefits under the Social Security Act. Claimant applied for disability benefits on October 7, 1987. In his application, Claimant alleges disability due to daily headaches, blackouts, and dizzy spells. Following the Secretary's denial of his application initially and on reconsideration, Claimant requested and received a de novo hearing before an administrative law judge (ALJ). Following a hearing on July 25, 1988, the ALJ found Claimant not disabled. This case was remanded by the Appeals Council for the purpose of receiving the testimony of a vocational expert. A second hearing was held on March 27, 1990, at which the ALJ heard testimony of a vocational expert. Following this supplemental hearing, the Secretary again found Claimant not disabled, a decision upheld by the Appeals Council. The district court denied Claimant's Motion to Remand for a Rehearing. It is this decision that Claimant appeals, arguing that (1) the ALJ's decision is not supported by substantial evidence; (2) the ALJ failed to carry the burden of proof; and (3) the ALJ applied inappropriate legal standards. We affirm.
 
 
 3
 Claimant was thirty-three years old at the time he applied for disability benefits. He has a high school education and, in his teenage years, worked very briefly as a janitor and as a construction worker, and later, as an auto mechanic. Due to his very limited work experience, the ALJ concluded he did not have any past relevant work history.
 
 
 4
 Claimant lives alone in a small apartment behind his parents' home. He does his own cleaning, shopping, and cooking, although he stated that his mother frequently does his laundry. Claimant alleges that his medical problems started at age seventeen when he was "poked in the eye" during a basketball game. He claims that since this incident he has had daily headaches and dizziness which preclude him from working. Although the medical evidence presented indicates that Claimant has been complaining of the headaches and dizziness for a long time, no apparent cause for these symptoms has been diagnosed.
 
 
 5
 On only one occasion, in November 1986, Dr. Roland Sanchez, a family practitioner, examined Claimant and diagnosed Claimant as suffering from chronic depression. He stated that Claimant was totally disabled. Claimant argues that Dr. Sanchez' opinion should have been given greater weight by the ALJ. Although a treating physician's opinion must be given deference over that of a consulting physician employed by the government, it may be disregarded "if it is brief, conclusory, and unsupported by medical evidence[.]" Frey v. Bowen, 816 F.2d 508, 513 (10th Cir.1987). There is no evidence indicating that Dr. Sanchez was Claimant's regular treating physician. He is not a psychiatrist or a psychologist, and his treatment of Claimant was limited and of short duration. His brief and conclusory opinion is not supported by medical evidence. See 20 C.F.R. § 404.1527; see also Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir.1991) (treating physician's report may be discounted if conclusory or unsupported by objective medical evidence).
 
 
 6
 Dr. Kenneth Graham, of the Valencia Counseling Services, examined Claimant in January 1987. He found that Claimant had no memory or concentration impairment and that his energy level, orientation, insight, and judgment appeared normal. He opined that Claimant suffers from dysthymic disorder.[1] Dr. Graham recommended individual psychotherapy in an effort to alleviate Claimant's disability. Claimant attended counseling sessions for approximately one year but did not appear to benefit from the psychotherapy.
 
 
 7
 In November 1987, Claimant was examined by a neurologist, Dr. Scott A. Metrick. Dr. Metrick concluded that Claimant's headaches were tension induced, that he could not discern a cause for the dizziness, and that overall, Claimant's symptoms were probably due to a "functional etiology" rather than from organic causes. Eye examinations failed to produce any evidence of Claimant's prior injury or any present abnormality. Dr. Metrick expressed some doubt as to whether a trauma of this kind could be responsible for Claimant's complaints. The Secretary discounted these alleged impairments because of the lack of objective corroborative evidence. See Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir.1990); see also Luna v. Bowen, 834 F.2d 161, 162 (10th Cir.1987). However, the ALJ did conclude that Claimant suffered from dysthymic disorder and dependent personality.
 
 
 8
 Also in November 1987, apparently at the request of the ALJ, Claimant was given a psychiatric examination by Dr. Carlos Balcazar, board certified in psychiatry and neurology. Dr. Balcazar concluded that Claimant's attention span and his ability to concentrate were unimpaired. He detected no disassociation or delusional thinking, although he stated that Claimant was passive and had low-average intelligence. However, he did note that Claimant was mildly depressed, that he appeared "sad," and that he complained of irregular sleeping habits, fatigue, and weakness. Dr. Balcazar concluded that Claimant's most interfering trait was his dependent personality disorder.
 
 
 9
 Dr. Balcazar further assessed that Claimant did not have adequate judgment to plan a work sequence, but did have the ability to use tools and materials in simple tasks and to perform one or two-step repetitive tasks at a competitive rate. Dr. Balcazar further judged that Claimant had a tendency toward isolation which may create problems with his ability to interact with co-workers and supervisors.
 
 
 10
 This court's review is limited to determining whether the Secretary's findings are supported by substantial evidence and whether correct legal standards were applied. Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the Secretary." Pacheco v. Sullivan, 931 F.2d 695, 697 (10th Cir.1991).
 
 
 11
 In order to establish qualification for disability benefits, Claimant must show a physical or mental impairment which can be expected to result in death or last for a continuous period of twelve months and which prevents Claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The Secretary has established a five-step sequential evaluation process for making this determination. 20 C.F.R. §§ 404.1520, 416.920; see also Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir.1988) (providing an in-depth discussion of the five steps). At step five of the process, once the Secretary has determined that a claimant cannot return to past relevant work, the Secretary must prove that the claimant can perform alternate jobs, available in the national economy. 20 C.F.R. § 404.1566; Diaz v. Secretary of Health & Human Servs., 898 F.2d at 776.
 
 
 12
 Claimant argues that the Secretary did not meet his burden of proving that Claimant has the residual functional capacity to perform other work in the national economy in view of Claimant's age, education, and work experience. See Williams v. Bowen, 844 F.2d at 751. Claimant contends that his mental and physical impairments preclude him from performing any kind of work, including sedentary work.
 
 
 13
 The vocational expert, Judith Beard, testified that Claimant could perform unskilled work such as cleaner II, housekeeping/cleaner, jewelry painter, and laundry worker. March 15, 1990, Hearing Tr. at 46. Ms. Beard further testified that these types of jobs were plentiful in the local and national economy. Id. Being cognizant of Dr. Balcazar's assessment, Ms. Beard suggested jobs which Claimant could do without preplanning and which did not require extensive interaction with co-workers or supervisors.
 
 
 14
 At the close of the hearing, counsel for Claimant requested additional psychological evaluation and testing, allegedly to discover whether Claimant's mental impairments would negatively impact his ability to perform the jobs proposed by the vocational expert. The ALJ denied this request. Claimant bases his claim for the need for further psychological examination upon a question and answer exchange between his counsel and the vocational expert. Counsel asked Ms. Beard whether there were vocational tests available which would answer questions regarding a person's ability to use tools and materials for simple jobs, and to perform one to two-step repetitive tasks at a competitive rate, and to evaluate a person's dependency and ability to interact with supervisors. The vocational expert answered that such tests were available through a psychologist. We fail to see how the existence of these tests proves Claimant's need for them. Although we agree the ALJ has a basic obligation to develop the record fully and fairly, see Thompson v. Sullivan, 933 F.2d 581, 585 (7th Cir.1991), "[t]he Secretary has broad latitude in ordering a consultative examination." Diaz v. Secretary of Health & Human Servs., 898 F.2d at 778.
 
 
 15
 As we have pointed out, the consulting psychiatrist, Dr. Balcazar, stated that he believed Claimant could perform simple jobs requiring the use of tools and materials. He further stated that Claimant could perform one or two-step repetitive tasks at a competitive rate. Although Dr. Balcazar stated that Claimant may have some difficulty interacting with co-workers and supervisors, the vocational expert testified that the jobs she suggested would require a minimum of this type of interaction once Claimant was trained. March 15, 1990, Hearing Tr. at 47-48. It is not the burden of the Secretary to determine the most appropriate job placement for Claimant, but only to determine that suitable placements exist. The ALJ met his burden of proof, and we agree with the ALJ that Claimant failed to establish the need for further psychological testing.
 
 
 16
 The ALJ determined that Claimant's mental impairments, although severe enough to "limit or preclude certain work-related activities," are not severe enough to meet or equal the severity set forth in the regulations. Once it is determined that Claimant has a mental impairment, he must then provide evidence to support a disabling impairment under the listings. See 20 C.F.R. § 404 Subpt. P, App. I. Claimant must exhibit marked or frequent functional limitations in two of the listed behavior signs to qualify as "disabled."[2] Claimant failed to provide sufficient evidence to meet these criteria and establish his disability. Appellant's App. at 39-40 and 44-46; 20 C.F.R. § 404.1520a.
 
 
 17
 The ALJ correctly relied on the conclusions of the consulting psychiatrist and the vocational expert. In addition, the ALJ was in a position to observe Claimant and give firsthand consideration to his complaints, recitation of daily activities, and his appearance and behavior at the hearing. See Williams v. Bowen, 844 F.2d at 755. This observation should be given deference.
 
 
 18
 In conclusion, we determine that the Secretary fully and fairly developed the record. See Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir.1987) (ALJ has duty to " 'inform himself about facts relevant to his decision' ") (quoting Heckler v. Campbell, 461 U.S. 458, 471 n. 1 (1983) (Bennan, J., concurring)). After careful review of the record, we cannot say that the Secretary's conclusions are unsupported by substantial evidence, or that the Secretary applied inappropriate legal standards.
 
 
 19
 Therefore, the judgment of the United States District Court for the District of New Mexico is AFFIRMED.
 
 
 
 *
 Honorable David Sam, District Judge, United States District Court for the District of Utah, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 " 'The essential feature of [dysthymic disorder or dysthymia] is a chronic disturbance of mood involving depressed mood ..., for most of the day more days than not, for at least two years....' " Gutierrez v. Sullivan, 953 F.2d 579, 586 n. 2 (10th Cir.1992) (quoting Diagnostic & Statistical Manual of Mental Disorders 230 (3d ed. rev. American Psychiatric Ass'n 1987))
 
 
 [2]
 These citeria set forth in 20 C.F.R. § 404.1520a(b)(3) are:
 
 
 [1]
 Restrictions of activities of daily living;
 
 
 [2]
 Difficulties in maintaining social functioning;
 
 
 [3]
 Deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner;
 
 
 [4]
 Episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms