**Martha S. WILLIAMS, Plaintiff,**

v.

**Donna SHALALA, Secretary of Health and Human Services, Defendant.**

No. 4:93cv0024 AS.

United States District Court,
N.D. Indiana,
South Bend Division
at Lafayette.

Dec. 8, 1993.

Ralph Robinson, Lafayette, for plaintiff.

Clifford D. Johnson, South Bend, for defendant.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Plaintiff Martha Williams ("Williams") appeals from a final judgment of the Secretary of Health and Human Services ("Secretary") denying her application for Social Security Disability Insurance Benefits (DIB) pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 416(i), 423. Jurisdiction over Ms. Williams' petition for judicial review is conferred upon this court by 42 U.S.C. § 405(g).

### A. Procedural History

Plaintiff applied for DIB on January 6, 1990 alleging disability since January 5, 1980 due to arthritis in both knees, both legs, both hands, and the left ankle, and cataracts. Tr. 140–42. Plaintiff's application was denied initially and on reconsideration, and she requested an administrative hearing before an administrative law judge (ALJ). ALJ Dale McLaughlin issued his decision of "not disabled" on November 29, 1990. Tr. 213–18. Plaintiff requested Appeals Council review and the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. Tr. 223–225. The Appeals Council noted that the ALJ's decision did not demonstrate consideration of all of the criteria required under Social Security Ruling 88–13, which provides guidelines for the evaluation of subjective symptoms, including pain. Tr. 224.

A second hearing was held before ALJ McLaughlin and on October 25, 1991 he again found Ms. Williams "not disabled." Tr. 233–41. Plaintiff again requested Appeals Council review and the Appeals Council again vacated the ALJ's decision and re-

manded the case for further proceedings. Tr. 254–56.

A third hearing was held on October 7, 1992 before ALJ Marshall Williams. Tr. 101–39. On November 24, 1992 the ALJ issued his findings and decision that Ms. Williams was not disabled. Tr. 12–25. The ALJ's decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review. Tr. 7–8. Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g).

### B. Standard of Review

The Act itself provides the pertinent standard of review: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). The Secretary's finding that Ms. Williams is not disabled must be upheld if it is supported by substantial evidence. *Pope v. Shalala,* 998 F.2d 473 (7th Cir.1993); *Pitts v. Sullivan,* 923 F.2d 561, 564 (7th Cir.1991). This court will not reweigh the evidence presented at the administrative hearing, *Young v. Secretary of Health and Human Services,* 957 F.2d 386, 388 (7th Cir.1992), nor will it determine whether Ms. Williams actually was disabled. *Id.; Stuckey v. Sullivan,* 881 F.2d 506, 508 (7th Cir.1989). Absent an error of law by the Secretary, this court must affirm her decision if there is substantial evidence to support it. *Herr v. Sullivan,* 912 F.2d 178, 180 (7th Cir.1990); *Kelley v. Sullivan,* 890 F.2d 961, 965 (7th Cir.1989). Substantial evidence is that quantum of relevant evidence which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Pope,* 998 F.2d at 473. It may be less than a preponderance of the evidence. *See, Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); *Young,* 957 F.2d at 389. Substantial evidence may be less than the weight of the evidence and a finding may be supported by substantial evidence even if a reviewing court might have reached a different conclusion. *Delgado v. Bowen,* 782 F.2d 79, 83 (7th Cir.1986).

## C. Description of the Secretary's Decision

The Secretary employs a five-step process to determine whether a claimant is eligible for benefits within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Campbell v. Shalala,* 988 F.2d 741 (7th Cir.1993). The Seventh Circuit has described this sequential inquiry:

> The Secretary must determine in sequence: (1) whether the claimant is currently employed; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. *Schroeter v. Sullivan,* 977 F.2d 391, 393 (7th Cir. 1992). Once the claimant has satisfied Steps One and Two, he will automatically be found disabled if he suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform his past work, the burden shifts to the Secretary to show that the claimant can perform some other job. *Rhoderick v. Heckler,* 737 F.2d 714, 715 (7th Cir.1984).

*Campbell,* 988 F.2d at 743; *see also Young,* 957 F.2d at 389.

Applying the five-step procedure in this case, ALJ Williams decided that:

1. The claimant met the disability insured status requirements of the Act on January 15, 1980, the date the claimant stated she became unable to work, and continued to meet them through December 31, 1984, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since January 15, 1980.

3. The medical evidence establishes that the claimant has severe arthritis and chronic anxiety and depression, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's allegations as to the restrictions caused by her impairments were not credible to the extent that they would have prevented her from performing sedentary work on and prior to December 31, 1984.

5. On and prior to December 31, 1984, the claimant had the residual functional capacity to perform the physical exertion and nonexertional requirements of sedentary work.

6. As of December 31, 1984, the claimant was able to perform her past relevant work as a cashier and dispatcher.

7. The claimant on December 31, 1984, the date last insured was 47 years old, which is defined as a younger individual.

8. The claimant has a twelfth grade education.

9. The claimant does not have any acquired work skills which are transferable to the skilled or semiskilled work functions of other work (20 CFR 404.-1568).

10. As of December 31, 1984, based on an exertional capacity for sedentary work, and the claimant's age, education, and work experience, section 404.1569 and Rule 201.21, Table No. 1, Appendix 2, Subpart P, Regulations No. 4 would have directed a conclusion of "not disabled."

11. The claimant's capacity for sedentary work was not compromised by nonexertional limitations. Accordingly, using the above cited rule as a framework for decisionmaking, the claimant was not disabled.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(f)).

## D. Issues on Review

The Secretary determined that Ms. Williams was not employed and did have a severe impairment during the time she was covered by disability insurance under the Act. Ms. Williams contends that there is not substantial evidence to support the Secretary's decision.

## E.  Discussion

1.  Step Three: Does Ms. Williams meet one of the Listings?

Since Ms. Williams satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. *Campbell*, 988 F.2d at 743. Ms. Williams claims that she meets both Listings 1.03 (*Arthritis of a major weight-bearing joint (due to any cause)*) and 12.04 (*Affective Disorders*). The ALJ determined that Ms. Williams did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4 ("the Listings"). Tr. 24. This court must determine whether substantial evidence supports the Secretary's determination.

### a.  Listing 1.03

■  For a claimant to meet Listing 1.03, the claimant must have a history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination, with:

A.  Gross anatomical deformity of hip or knee (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) supported by X-ray evidence of either significant joint space narrowing or significant bony destruction and markedly limiting ability to walk and stand; or

B.  Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint and return to full weight-bearing status did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, Listing 1.03.

Plaintiff contends that she has met the criteria of this section, and points particularly to the September 25, 1979 report of Dr. Lee Cattell. Tr. 194–96. Ms. Williams was injured in a fall at work. Her right knee was damaged so that she could not walk. Tr. 194. Dr. Cattell refers to the X-rays and arthrogram taken by Dr. Lind leading up to her knee surgery on May 10, 1979. *Id.* Dr. Cattell examined the plaintiff four and a half months after her surgery, and at that time she had normal heel to toe gait but was unable to do a knee bend. Tr. 195. Dr. Cattell diagnosed Ms. Williams as (1) status-post operative arthrotomy for excision of medial meniscus, (2) atrophy of the right thigh (secondary to diagnosis #1), and (3) degenerative osteoarthritis of both right and left knees. *Id.* Dr. William Ferguson examined the plaintiff on April 15, 1980 and stated that she "will continue to have difficulty in her knee, because of arthritis." Tr. 203. Dr. Ferguson examined Ms. Williams again on April 7, 1981, and agreed with Dr. Cattell's diagnosis. Dr. Tom Gripe's examination of the plaintiff on December 28, 1983 also notes subtalar degenerative arthritis primarily in the right knee. Tr. 207.

■  ALJ Williams found that the claimant's arthritis did not meet the level of the Listings. Tr. 24. There is substantial evidence in the record to support this finding. In order to meet a listed impairment, a plaintiff must show that she meets *all* elements of the Listing. *Sullivan v. Zebley*, 493 U.S. 521, 5, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990); SSR 91–7c at 4. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan*, 493 U.S. at 5, 110 S.Ct. at 891, SSR 91–7c at 4.

There is evidence in the record that the claimant did not meet all criteria of Listing 1.03. According to the evaluations of Ms. Williams by Dr. Ferguson on April 7, 1981 and by Dr. Watson on November 20, 1985, she had essentially normal motion in both knees, without subluxation, contracture, or ankylosis and only "some" instability in the right knee. Tr. 202, 209. Ms. Williams had to prove that she was disabled no later than December 31, 1984; contemporaneous medical evaluations support the Secretary's finding that she was not.

### b.  Listing 12.04

■  The ALJ determined that although the claimant testified to symptoms that would meet Listing 12.04 (*Affective Disorders*), there was no medical evidence to support the existence of a severe mental impairment. A physical or mental impairment must be established by medical evidence con-

of signs, symptoms, and laboratory findings; a claimant's statement of symptoms alone is insufficient to establish an impairment. 20 C.F.R. § 404.1508. The ALJ determined that "the record does not document any substantial evidence of functionally disabling depression as of the date last insured." Tr. 23.

Ms. Williams was hospitalized in January of 1981 for abdominal pain and diarrhea. Tr. 317. The attending physician, Dr. Shook, wrote: "Because of a strong suspicion of underlying anxiety and depression, she was also begun on Atipen [sic]." Tr. 318. Dr. Shook diagnosed: "1. Diverticulosis of the sigmoid colon. 2. Chronic anxiety and depression." *Id.* The prescription from Dr. Shook was actually for Ativan, described by the *Physicians' Desk Reference* ("*PDR*") as indicated for the management of anxiety disorders or for the short-term relief of the symptoms of anxiety associated with depressive symptoms. *PDR* 2546 (1993). Furthermore, Ms. Williams' treating physician had prescribed and she remains on Tranxene, described by the *PDR* as indicated for the management of anxiety disorders. *Id.* at 554. According to Ms. Williams' testimony, her vocational rehabilitation counselor in 1981 recommended that she see a psychiatrist for depression. Tr. 80. According to the Indiana Department of Human Services, Ms. Williams was a client but her records were destroyed by the agency after three years. Tr. 230.

In his decision the ALJ stated that Ms. Williams had testified to symptoms of severe depression sufficient to meet Listing 12.04, but that there was not sufficient medical evidence. Tr. 22–23. The ALJ stated that Ms. Williams had never been referred to a psychiatrist, despite her uncontroverted testimony regarding the vocational rehabilitation counselor. The claimant also testified that she is seeing Dr. Weida for depression, and he is prescribing Tranxene. Tr. 119. When the ALJ asked Ms. Williams why she had not ever sought help from a psychiatrist, she answered: "Because I couldn't afford to." Tr. 124; *see also* Tr. 130. The ALJ stated that Ms. Williams testified that she took Tranxene as a sleeping pill. Tr. 23.

What she testified was that she "can't sleep without the Tranxene." Tr. 116. As Tranxene is a treatment for anxiety, that is not surprising. Such a statement is also consistent with the *PDR*'s warnings that Tranxene is addictive and abrupt withdrawal can result in insomnia, irritability, and diarrhea (*PDR* at 554), all problems complained of by Ms. Williams in the past. Ms. Williams also testified to attempts at and thoughts of suicide (Tr. 118, 120), a possibility that the *PDR* lists as a precaution for users of Ativan. *PDR* at 2546. It appears that Ms. Williams' mental problems began in the early 1970s and intensified around the time she was injured. *See* Tr. 118–19.

It is clear to this judge that Ms. Williams has presented more than enough evidence that she suffers from a mental impairment to trigger the special procedures required of the Secretary in such cases. *See Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir.1991); *see also Stambaugh v. Sullivan*, 929 F.2d 292, 295–96 (7th Cir.1991). Once a claimant has presented evidence that she suffers from a mental impairment, the Secretary is required to complete a standard document. *Howell*, 950 F.2d at 348; 20 C.F.R. § 404.-1520a(d). This form was completed by the ALJ apparently without the assistance of an expert and is appended to his decision in the record at Tr. 26–28 as required by 20 C.F.R. § 404.1520a(d)(2).

Although the regulations do not mandate a psychiatric or psychological evaluation of every claimant who claims a mental impairment, the regulations do severely limit proceeding without a medical advisor and seem to presume that an ALJ has before him expert evaluation of the mental impairment. *See Stambaugh*, 929 F.2d at 296. Congress has laid the foundations for making disability determinations when mental impairments are involved:

> An initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Secretary has made every reasonable effort to ensure that a qualified psychiatrist or psychologist

has completed the medical portion of the case review and any applicable residual functional capacity assessment.

42 U.S.C. § 421(h); *see also Shields v. Sullivan,* 801 F.Supp. 151, 159 (N.D.Ill.1992).

As in *Shields,* expert input was clearly necessary here to conduct a proper 20 C.F.R. § 404.1520a analysis. *See Shields,* 801 F.Supp. at 159. Ms. Williams has presented very persuasive evidence of a mental impairment, and yet the record does not contain the kind of specific expert medical evidence to support the type of in-depth analysis envisioned by the regulation. *Id.* The Williamses have testified that they can not afford the kind of psychiatric attention that Ms. Williams requires. Tr. 124, 130. On remand, in order for the Secretary to develop a full and fair record as required by *Thompson v. Sullivan,* 933 F.2d 581, 585 (7th Cir.1991), the requisite expert input must be obtained to enable *consideration of Williams' possible mental impairment in accordance with 20 C.F.R. § 404.1520a.*

2. Step Four: Can Ms. Williams perform her past relevant work?

At this step, the Secretary's decision is insupportable. The ALJ states in his findings that: "As of December 31, 1984, the claimant was able to perform her past relevant work as a cashier and dispatcher." Tr. 24. The jobs of cashier and dispatcher referred to were in 1986 and 1989, respectively. The evidence makes it clear that these were unsuccessful attempts at work, and the ALJ recognized that when he found that: "The claimant has not engaged in substantial gainful activity since January 15, 1980." *Id.*

This inconsistency does not require an in-depth analysis. To be relevant, past work must have constituted "substantial gainful activity." 20 C.F.R. § 404.1565(a). The evidence shows, and the ALJ found, that William's jobs as cashier and dispatcher did not constitute substantial gainful activity. Tr. 24. Therefore, neither job was past relevant work and both are irrelevant to the determination here. Furthermore, the ALJ acknowledged that Williams was not capable of doing her pre–1980 past relevant work as a factory worker or maid. Tr. 22. ALJ

McLaughlin had also made that determination at a previous hearing. Tr. 240.

Clearly, there is not substantial evidence to support the Secretary's determination that Ms. Williams could perform her past relevant work.

*Conclusion*

Having thoroughly reviewed the record in this case, the court concludes that there was not substantial evidence to support the Secretary's decision. On remand, the Secretary will obtain the requisite expert input for an evaluation of Ms. Williams' mental impairment. Thus, for the reasons described herein, Ms. Williams' motion for summary judgment is **GRANTED,** and the Secretary's final decision is **OVERRULED AND REMANDED. SO ORDERED.**