**Russell L. THOMAS, Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART, Defendant–Appellee.**

No. 02–1817.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 2002.

Decided Jan. 7, 2003.

Before POSNER, COFFEY, and MANION, Circuit Judges.

ORDER

In October 1999 Russell Thomas applied for Disability Insurance Benefits and Supplemental Security Income, claiming that chronic headaches, numbness in his extremities, and pain in his neck and back prevented him from performing his work as a delivery driver. After the denial of his application for benefits, Thomas requested a hearing before an Administrative Law Judge, who found Thomas not disabled. The Social Security Administration Appeals Council denied Thomas's request for review, and the ALJ's decision became the final decision of the SSA Commissioner. Thomas then sought judicial review of the Commissioner's decision in the district court. He now appeals from the district court's entry of judgment in favor of the Commissioner. Because the ALJ's decision was supported by substantial evidence, we affirm.

I. Background

A. *Thomas's Impairments*

In February 1994 Thomas was in a car accident and suffered a fracture and dislo-

cation of the C6–7 vertebrae in his neck. He claims that the resulting damage to his spinal cord caused numerous neurological symptoms, including migraine headaches, sleep apnea, muscle weakness, numbness, loss of sensation, chronic neck and back pain, abnormal reflexes, and inability to coordinate voluntary muscle movement in his extremities. According to Thomas, the symptoms have worsened to such an extent that he has difficulty walking, sitting or standing still for more than a few minutes, grasping objects, lifting more than ten pounds, staying awake, and concentrating on tasks.

Following his accident, Thomas was treated by Dr. Thomas Keucher, a neurosurgeon, and Dr. John Jacobs, his primary physician. Dr. Keucher performed a laminectomy[1] and fused and plated the fractured vertebrae. Several months after his surgery, Thomas complained of pain and decreased range of motion in his neck, and Dr. Keucher recommended neck exercises. In June 1995, and again in July 1996, Thomas consulted Dr. Jacobs about chronic headaches that he had been suffering since the car accident. Thomas claimed to suffer mild headaches on a daily basis and frequent migraines that could last three or four days.

According to the record, Thomas did not seek medical attention again until after he quit his job as a delivery driver on September 14, 1999. He left this position after he found himself almost falling asleep at the wheel on two separate occasions. In November 1999 Thomas was examined by both Dr. David Brockman and Dr. Jacobs. Dr. Brockman diagnosed Thomas with chronic pain due to central cord syndrome.[2] Dr. Jacobs noted that Thomas had weakness on his right side, clonus[3] of the feet, and hyperreflexia[4] of the patellar, Achilles, brachial radialis, and biceps reflexes.

Throughout the fall of 1999 into the winter and spring of 2000, Thomas visited several health professionals. Dr. Jacobs referred Thomas to Dr. Jan Warner, a psychologist, and ordered a sleep study which revealed that Thomas was suffering from sleep apnea. He also referred Thomas to Dr. Keucher for a neurological evaluation. Dr. Keucher reported that Thomas had made an "essentially complete recovery" of the strength in his hands but still suffered from some loss of sensation in his legs. An MRI of Thomas's neck revealed a post-traumatic syrinx, a cavity in the spine filled with leaked cerebrospinal fluid. But, in Dr. Keucher's opinion, the syrinx was not severe enough to cause the symptoms that Thomas described.

Dr. Jacobs's treatment notes suggest that he was optimistic that Thomas would be able to work again. In April 2000, Dr. Jacobs opined, "I am not certain there is any reason why he could not work in a sedentary job," and in May, in a report to Vocational Rehabilitation, he wrote, "At this time I think it is possible for the patient to return to work in some setting which is yet to be determined."

---

1. The surgical removal of the posterior arch of a vertebra. STEDMAN'S MEDICAL DICTIONARY 964 (27th ed.2000).

2. A gradual cavitation in the central segments of the spinal cord that causes muscle weakness, numbness, and some loss of sensation. STEDMAN'S MEDICAL DICTIONARY 1750 (27th ed.2000).

3. A form of movement marked by contractions and relaxations of a muscle, occurring in rapid succession. STEDMAN'S MEDICAL DICTIONARY 364 (27th ed.2000).

4. An exaggeration of the deep tendon reflexes. STEDMAN'S MEDICAL DICTIONARY 854 (27th ed.2000).

Shortly after Dr. Jacobs wrote to Vocational Rehabilitation, he and Dr. Warner referred Thomas to Dr. Stephen Ribaudo, a specialist in Physical Medicine and Rehabilitation. Dr. Ribaudo diagnosed Thomas with multiple physical and mental impairments. In his report to Dr. Jacobs, Dr. Ribaudo opined that these impairments would severely limit Thomas's physical activity: "I find all of the patient's symptoms understandable and substantiated by objective findings. They cause significant impairment and resultant disability. I believe he can no longer engage in any form of full time gainful employment, even sedentary in nature on a permanent basis."

## B. Thomas's Claim for Disability Benefits

In October 1999 Thomas filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), claiming that he was disabled as of September 14, 1999, the day he quit his job. Thomas's claim was denied initially and on reconsideration, and he requested a hearing before an ALJ. The hearing took place on September 22, 2000; Thomas appeared without an attorney or other representative.

At the hearing, Thomas narrated his work history. In addition to his most recent job as a delivery driver, Thomas had worked as a film inspector from 1977 to 1988. This job was primarily sedentary and required Thomas to splice film together and clean it. He testified that his hands were constantly numb, that he had pain if he stood or sat in one position for more than a few minutes, that his back, neck, and side hurt all the time, that he had difficulty walking, lifting, and grasping, and that he suffered from migraine headaches. He also told the ALJ about the two incidents when he almost fell asleep while driving for his delivery job.

Thomas's mother Annie testified that her son was withdrawn and unproductive, that he couldn't mow the lawn or do any lifting, and that he had moved in with his parents the previous year because he could no longer "function."

After hearing from Thomas and his mother, the ALJ constructed for the vocational expert a hypothetical question that assumed that Thomas could work at the light exertional level:

Assume if you will, an individual 42 years of age, with a high school education and the past work history that you've summarized for us. Assume that individual is limited to work at the light exertional level or below. He's limited to occupations which require only occasional bending, crouching, crawling, kneeling, stooping and all those postural limitations. Assume further the individual had to avoid moderate exposure to unprotected heights or operating hazardous moving machinery. Assume the individual could not work in occupations which required verbal communication skills, would those limitations, would the individual be capable of any of Mr. Thomas's past employment, either as he performed it or as it is usually performed in the national economy?

The vocational expert responded that such a hypothetical individual could perform Thomas's former job as a film inspector "which is at the light level of physical tolerance" and "which would allow for sit/stand option."

The ALJ performed the required five-step evaluation of Thomas's condition in order to determine whether he was eligible for benefits. 20 C.F.R. §§ 404.1572, 416.972. At Step 1, the ALJ found that Thomas had not engaged in substantial gainful activity since his onset date of September 14, 1999. Proceeding to Step 2, the ALJ found that Thomas suffered from

a combination of severe impairments that significantly limited his ability to perform work activities. At Step 3, the ALJ determined that Thomas's impairments were not severe enough to meet or medically equal an impairment listed in Appendix I of the Social Security Regulations. The ALJ therefore went on to Step 4 to determine Thomas's residual functional capacity (RFC). He concluded that Thomas retained the RFC to perform his past work as a film inspector. Accordingly, he denied Thomas's application for disability benefits.

In the written order announcing his decision, the ALJ relied heavily on Dr. Keucher's January 2000 assessment of Thomas and his report on Thomas's MRI as well as on Dr. Jacobs's opinion that Thomas should be able to perform sedentary work. He discounted Dr. Ribaudo's medical opinion because he examined Thomas only once, and instead credited the opinion of Dr. Jacobs as Thomas's treating physician.

Thomas sought review in the district court, claiming that the ALJ had failed both to adequately advise him of his right to counsel and to fully and fairly develop the record. Thomas also moved the court to consider new and material evidence. This evidence included two documents that Thomas claimed had been submitted to his local Social Security office but which did not find their way into Thomas's file and therefore did not come before the ALJ. One of these was a "Continuing Accident & Health Claim Form" signed by Dr. Keucher and dated February 2000. The other was a similar form signed by Dr. Jacobs and dated September 19, 2000, just days before Thomas's hearing before the ALJ. On each form, the doctor had checked a box indicating that Thomas was unable to work.

The district court agreed that ALJ had not adequately informed Thomas of his right to counsel. Nevertheless, the court concluded, the ALJ had fully and fairly developed the record, and thus there was no need for a remand. The court further found that Thomas's new evidence was immaterial and would not have changed the outcome of his hearing even if the ALJ had taken it into consideration.

## II. Analysis

### A. Development of the Record

Thomas first argues that the ALJ failed to fully advise him of his right to counsel. A claimant has a statutory right to counsel at his disability benefits hearing. 42 U.S.C. § 406; 20 C.F.R. § 404.1700. This right can be waived if the ALJ provides the claimant with sufficient information to make such a waiver knowingly and intelligently. *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir.1991). Thomas received written notice that he had a right to representation at his hearing; in several of our sister circuits, this notice would be adequate to establish that Thomas's waiver of counsel was knowing. *Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir.1996); *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 855 (6th Cir.1985). But this court has adopted more stringent requirements; simply telling a *pro se* claimant that he has a right to representation is not enough to validate a waiver of counsel. *Thompson*, 933 F.2d at 584. An ALJ must explain to the claimant how an attorney could assist him in the proceedings. *Id.* He must also notify the claimant that he may be able to obtain legal representation for free or on a contingency basis, and that the court will review any award of attorney fees, which will in no case exceed twenty-five percent of past-due benefits. *Id.* If the ALJ omits any of this information when inquiring whether a claimant wishes

to proceed without counsel, then the claimant's waiver of counsel is invalid. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir.1994); *Thompson*, 933 F.2d at 584.

■ The ALJ who presided over Thomas's hearing merely asked, "Mr. Thomas, you have a right to be represented by counsel or some representative of your choice. Do you want to proceed without counsel?" The ALJ did not elaborate on the advantages of retaining counsel or inform Thomas of either the possibility of a contingency agreement or the twenty-five percent cap on attorneys' fees. Under these circumstances, the district court was correct in finding Thomas's waiver of counsel invalid. *See Binion*, 13 F.3d at 245.

But even when his waiver of counsel is invalid, a claimant is not entitled to a remand unless the ALJ failed in his duty to fully and fairly develop the record. *Id.* Thomas asserts that, because the ALJ did not obtain a valid waiver of counsel, the burden shifts to the Commissioner to demonstrate that the ALJ fully and fairly developed the record. According to Thomas, the Commissioner cannot meet this burden: the ALJ did not fully and fairly develop the record and, accordingly, his case must be remanded for the taking of further evidence.

An ALJ always has a duty to ensure that the record is fully and fairly developed, and we particularly emphasize that duty when a claimant proceeds *pro se. Binion*, 13 F.3d at 245. *Thompson*, 933 F.2d at 584. But even when a claimant proceeds *pro se*, this court "generally respects the ALJ's reasoned judgment" regarding how much evidence is needed to make a finding about disability. *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir.1994). As long as the ALJ has enough evidence before him to make a disability determination that is supported by substantial evidence, the record has been adequately de-

veloped. *See Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir.1999); *Nelson v. Apfel*, 131 F.3d 1228, 1235–36 (7th Cir.1997). We will defer to the ALJ's judgment that the record has been adequately developed unless we find a "significant omission" in the evidence. *Luna*, 22 F.3d at 692. An omission is "significant" only if it is prejudicial. *Nelson*, 131 F.3d at 1235.

■ Thomas argues that the ALJ neglected to fully and fairly develop the record because he did not consider all of Thomas's medically determinable impairments in combination as he was required to do under 20 C.F.R. §§ 404.1523, 416.923, once he determined that Thomas was severely impaired. According to Thomas, he suffered prejudice as a result of the ALJ's failure to address his psychological problems and the effects of his sleep apnea. But Thomas fails to show us in what way he was prejudiced. In his brief, he refers generally to his depression and his sleep apnea. He does not, however, point to any specific facts about his depression or his sleep apnea that were not brought out in the administrative record. In other words, he does not specify what pieces of evidence should have been included in the record nor does he explain how this evidence would have changed the outcome of his hearing. *See Nelson*, 131 F.3d at 1235–36. Thus Thomas has failed to demonstrate that a significant omission in the record prejudiced him so as to require a remand. *Id.* at 1236.

Moreover, the ALJ was able to reach a reasoned decision with the evidence that was before him. The medical opinions of both Dr. Keucher and Dr. Jacobs, along with the report on Thomas's MRI, provided ample basis for the ALJ to conclude that Thomas was not disabled. The ALJ's ruling was supported by substantial evidence, and we therefore have no grounds

for disturbing it. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir.2001).

In a final effort to demonstrate that the record was inadequately developed, Thomas argues that the brevity of his hearing– the hearing takes up only eleven pages of transcript–demonstrates that the ALJ did not gather all the relevant evidence. But the length of a hearing does not by itself establish that a hearing was not sufficiently comprehensive. *Thompson v. Sullivan,* 987 F.2d 1482, 1492 (10th Cir.1993).

### B. "Sentence Six" Remand

Thomas also requests a remand under sentence six of 42 U.S.C. § 405(g), based on new evidence. A court may order a "sentence six" remand when a claimant presents new, material evidence which, for good cause, he could not present earlier. *Richmond v. Chater,* 94 F.3d 263, 268 (7th Cir.1996). Such evidence is "material" if there is a reasonable probability that it would have changed the outcome of the claimant's hearing, and the evidence is "new" if it did not exist at the time of the hearing or was unavailable to the claimant. *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir.1997).

Thomas has attached his new evidence to his brief as Exhibits 1 through 6.[5] Exhibits 1, 3, and 6, "Continuing Accident & Health Claim Forms" completed and submitted by Thomas's doctors, are repetitive of material already in the record. Exhibit 2, a short note by Dr. Jacobs stating that Thomas is unable to work due to significant back, neck, and head pain, is already part of the administrative record, Admin. R. at 146, and so is not "new." Exhibit 4, a "Continuing Accident & Health Claim Form" completed by Dr. Jacobs and dated September 12, 2000, is not material. Dr. Jacobs checked a box on this form indicating that Thomas could not work, but he did not give a detailed explanation. Weighed against the evidence already in the administrative record, this one-page form does not suggest the probability of a different outcome to Thomas's hearing. None of these documents supports Thomas's request for a sentence-six remand.

### III. Conclusion

We agree that Thomas's waiver of counsel was invalid. Nonetheless, the ALJ fulfilled his duty to adequately develop the record, and his decision was supported by substantial evidence.

AFFIRMED

---

**5.** Thomas does not contest the district court's finding that one document, Exhibit 5, is immaterial. Thus, although Exhibit 5 was pre- sented to the district court, it is not before this court.