Mirta ROSA, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.

Civ. No. 84–3375.

United States District Court, D. New Jersey.

Jan. 19, 1988.

Stephanie A. Ebers, Sp. Asst. U.S. Atty., Newark, N.J., for defendant.

Joel M. Solow, Freeman & Bass, P.A., Newark, N.J., for plaintiff.

OPINION

SAROKIN, District Judge.

On December 5, 1985, this court remanded plaintiff's social security disability case to the Secretary of the Department of Health and Human Services ("the Secretary") for further administrative proceedings. The Appeals Council of the Department of Health and Human Services, in turn, vacated its prior denial of plaintiff's request for review and remanded the case to an administrative law judge ("ALJ") for a hearing. That hearing was an offense to the Social Security Act. The court therefore vacates the Secretary's decision a second time and remands the case for a fair hearing.

## BACKGROUND

Plaintiff is a fifty year old woman who was born in Puerto Rico and moved to New Jersey in 1958. Until August 12, 1982, she held a steady job. At that time, however, she entered the hospital with rectal bleeding, abdominal cramps, and weakness. She was diagnosed as suffering from ulcerative colits and uncontrolled diabetes mellitus. Since her hospitalization in 1982, plaintiff has not returned to work.

She filed for disability insurance benefits and supplemental security income on December 20, 1982. The Secretary denied her application, but this court remanded the case for further administrative action on December 5, 1985. The Appeals Council of the Department of Health and Human Services, which had earlier denied plaintiff's request for review, then vacated that denial and remanded the case to an ALJ for a hearing.

The ALJ convened the hearing on the morning of September 5, 1986. Plaintiff was represented by an attorney at that hearing, and also had a Spanish language interpreter. The hearing lasted slightly less than one hour.

On October 27, 1986, the ALJ issued a recommended decision in which he found plaintiff not disabled and recommended that she be denied disability insurance benefits as well as supplemental security income. The Appeals Council adopted the findings and conclusions of the ALJ in a decision dated January 30, 1987.

On her appeal from the adverse decision of the Secretary, plaintiff contends that the Secretary's decision was not supported by substantial evidence as 42 U.S.C. § 405(g) requires. Defendant, in response, argues that his decision was in fact so supported. Plaintiff, however, also argues that defendant denied her due process and her statutory right to a hearing. Because the transcript so vividly demonstrates an abject violation of plaintiff's statutory rights, the court does not reach the merits of plaintiff's disability claim.

## DISCUSSION

Although a district court's most frequent task in disability cases is to determine whether the Secretary's decisions are supported by substantial evidence, *see* 42 U.S.C. § 405(g), a court may also ascertain whether a claimant was accorded a full and fair hearing. *See, e.g., Arroyo v. Schweiker,* 534 F.Supp. 150, 152 (S.D.N.Y.1981); *Thomas v. Schweiker,* 573 F.Supp. 327 (W.D.Tex.1983). When the Secretary fails or refuses to provide a disability claimant with the fair procedures to which the claimant is entitled, a court may remand the case to the Secretary with instructions to afford the claimant fair treatment. In the case before the court, plaintiff's entitlement to a fair hearing flowed from the Social Security Act itself, 42 U.S.C. § 405(b)(1), which provides that "[u]pon request by any ... individual [applying for disability benefits] ..., [the Secretary] shall give such applicant ... reasonable notice, an opportunity for a hearing with respect to such decision, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse his findings of fact and such decision."

The hearing that the Secretary actually provided for the plaintiff was shameful in its atmosphere of alternating indifference, personal musings, impatience and condescension. The court is confident that the hearing was not the sort of procedure which Congress intended in enacting 42 U.S.C. § 405(b)(1).

As the transcript of the hearing speaks largely for itself, the court here recounts only the most offensive and egregious improprieties:

The ALJ's most pressing concern at the hearing was expedience. His denials of all of the claimant's attorney's procedural requests were not merely perfunctory; they were impatient and irritated. Plaintiff's attorney began the hearing by requesting a subpoena for plaintiff's treating physician (Tr. 251). The ALJ ruled that "the motion is denied as usual, you know" (Tr. 252). The lawyer then asked for permission to make an opening statement (Tr. 252). The

ALJ refused the request, asking rhetorically, "what are you going to say that won't come out in the hearing? ... I'd prefer you to have a closing statement after we're fully aware of all of the facts, and you can put that in writing" (Tr. 254).

Later in the hearing, the attorney again requested a subpoena for a physician (Tr. 257). The ALJ denied the request on the grounds that

we'd never get them if we started bringing them in. There won't be anybody to do the examinations—they'd all quit on us. You know that.... It would destroy the system.

(Tr. 258). Still later, plaintiff testified that she received some money from her former employer in 1984 upon her official termination, even though she had not reported for work since 1982. The following colloquy ensued:

ALJ: That's a bunch of nonsense, a bunch of nonsense.... [B]ring in a guy from Victory [her former employer] to testify as to why she got this money ...

Attorney: May I—may I request a subpoena for that purpose?

ALJ: Oh, no. See if you can get them to consent. I don't believe her. I don't believe her at all.

Attorney: I have no way to compel anybody from Victory to come over here.

. . . . .

ALJ: No, I'm not going to issue a subpoena because this case is ending today. You know what I mean?

(Tr. 269).

Nor did the ALJ confine his impatience to his rulings on the claimant's procedural requests. He continually harrassed the claimant's attorney and ordered him to accelerate his presentation of the case. After one transcript page of testimony about the claimant's background, the ALJ interrupted: "All right, go ahead Joel, ask her about her problem" (Tr. 254). After another page of testimony, the judge interjected with annoyance: "Lead her. Lead her" (Tr. 255). Then, after seventeen transcript pages of generally irrelevant dialogue between the ALJ, the claimant, and her attor-

ney, the ALJ ordered plaintiff's attorney to finish the case in ten minutes (Tr. 272). When the attorney took exception to that order, the ALJ said: "Take exception all you want. We start the next case at a quarter to ten" (Tr. 272). Four pages later, the judge further restricted the attorney's allotted time: "All right, now Joel, come on. You've got one minute and then we're going to move on to your next case" (Tr. 276). The attorney noted his exception to that order, and the ALJ's response can only be described as jeering: "Come on, you got one last question. Make it a good one" (Tr. 276). When the attorney attempted to dispute the ALJ's time limitation, the judge revealed the true motivation for his hurry: "Joel, we got three cases together this morning. Don't you want to go to lunch at all?" (Tr. 276).

During the few moments that the ALJ actually devoted to the substance of the hearing, his focus was wholly improper. He measured the gravity of plaintiff's condition against his own mother's illnesses (Tr. 259–261). He gave extensive advice to the plaintiff about the proper medication for, and diagnosis of, her illnesses (Tr. 259–262). He even offered his opinion as to whether a person suffers more from diarrhea than from constipation (Tr. 262).

Most importantly, the ALJ demonstrated genuine contempt for the statute he was administering. After hearing plaintiff testify for a few minutes, the ALJ became convinced that plaintiff was not entitled to benefits for the first year or two of her claimed period of disability. He used this conclusion to attempt to turn the hearing into a cheap bargaining session, in which the ALJ would agree to make a finding of disability in exchange for plaintiff's choosing a later disability onset date and ending the hearing:

ALJ: I'm not going to pay her back to '82. That you could forget.... You got to amend you onset date here.

. . . . .

ALJ: Well, change the onset date, and stop this. I'm not going to go beyond this anyway. Pick a date in '85, and I'll,

I'll be very favorably to, to end this thing.

. . . . .

ALJ: What's your new onset date? Pick a date in the middle of '85 and you can go home. W. ' you can't go home, but you can send her home. Now how many times—that's an offer you can't refuse. (Tr. 266–268).

This court can do nothing to highlight the wrongfulness and offensiveness of the ALJ's behavior; his conduct speaks for itself. Courts have, on other occasions, reprimanded administrators for excessive preoccupation with expedience. *See, e.g., Arroyo v. Schweiker*, 534 F.Supp. 150, 152 (S.D.N.Y.1981). Courts have also emphasized that it is the duty of an administrative law judge to develop an administrative record fully and fairly, even where a claimant is represented by counsel. *See, e.g., Jennings v. Secretary*, 770 F.2d 747, 748 (8th Cir.1985). Even where no one error, standing alone, would suffice to set aside an administrator's determination, a large number of errors can have the combined effect of rendering a hearing unfair and inadequate. *See Hankerson v. Harris*, 636 F.2d 893, 897 (2d Cir.1980).

■ The court has no difficulty in concluding that the ALJ's errors combined to create an unfair hearing in this case. This court has previously criticized this agency's heartlessness in the repeated and unfounded rejection of a multitude of clearly valid claims. However, even in those cases, the unjust results followed seemingly adequate procedures. In this matter there was not even the pretense of a full and fair hearing. Once we foresake fairness and due process because of the pressure of heavy caseloads, then our system of justice will end. Although administrative hearings are not formal trials, nor should they be so informal or limited that their fairness is destroyed.

The hearing conducted in this matter fell far below the standards of the Social Security Act, 42 U.S.C. § 405(b)(1). Accordingly, the court vacates the decision of the Secre-

tary and remands the case for a full and fair hearing.