**Martha S. WILLIAMS, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner, Social Security Administration, Defendant.**

**No. 4:95cv0046 AS.**

United States District Court, N.D. Indiana, Hammond Division.

Jan. 31, 1996.

Ralph Robinson, Lafayette, IN, for plaintiff.

Clifford D. Johnson, Office of the United States Attorney, South Bend, IN, for defendant.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Plaintiff Martha S. Williams (the "claimant") appeals from a final judgment of the

Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act (the "Act"), 42 U.S.C. §§ 416(i), 423(d). The claimant contends that she has been denied due process of law as a result of the administrative law judge ("ALJ") prejudging the outcome of her case. Alternatively, the claimant challenges the Commissioner's decision on remand that she has no impairment or combination of impairments listed in or medically equal to an impairment listed in the Social Security regulations, and that she has the residual functional capacity ("RFC") to perform a significant number of jobs in the national economy. This court has jurisdiction over Ms. Williams' petition for judicial review pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

### I. Procedural History

The present case has traced a long and circuitous route through the administrative and judicial branches of the federal government. The claimant applied for DIB on January 16, 1990, alleging that she became disabled as of January 15, 1980.[1] Her application for benefits was denied initially and on reconsideration. Ms. Williams subsequently requested an administrative hearing before an administrative law judge, and on November 29, 1990, ALJ Dale McLaughlin rendered his decision that, although the claimant had a severe physical impairment, she had no impairment or combination of impairments listed in or medically equal to an impairment listed in the Social Security regulations. Furthermore, ALJ McLaughlin found that while Ms. Williams was unable to return to her past relevant work, she had the RFC to perform sedentary work activities. The claimant filed a request for review with the Appeals Council, and on June 24, 1991, the Council vacated the decision and remanded the case to ALJ McLaughlin to

further evaluate the claimant's subjective symptoms of pain pursuant to the criteria set forth in Social Security Ruling 88–13.

A second hearing was held before ALJ McLaughlin on August 19, 1991. In a decision dated October 25, 1991, the ALJ again determined that Ms. Williams was able to perform sedentary work and thus was not disabled within the meaning of the Act. Following the claimant's request for review, the Appeals Council vacated ALJ McLaughlin's second decision and remanded the claim for further proceedings. This time, the Appeals Council remanded the case to a different administrative law judge, directing the ALJ to evaluate, *inter alia*, the severity of any mental impairment, and to include in his decision a Psychiatric Review Technique Form ("PRTF").[2] Following Ms. Williams' third administrative hearing, ALJ Marshall Williams determined on November 24, 1992, that the claimant had severe arthritis as well as chronic anxiety and depression, but concluded that she had no impairment or combination of impairments listed in or medically equal to an impairment listed in the Social Security regulations. Additionally, ALJ Williams found that the claimant in fact had the RFC to perform her past relevant work and therefore was not disabled within the meaning of the Act. The Appeals Council denied the claimant's request for review on March 5, 1993, rendering the ALJ's decision the final administrative decision pursuant to 20 C.F.R. § 404.981.

The claimant then filed a petition for judicial review of the administrative decision in this court pursuant to 42 U.S.C. § 405(g). In a decision dated December 8, 1993, this court concluded that although substantial evidence existed to support the ALJ's finding that Ms. Williams was not disabled under Listing 1.03, *(Arthritis of a major weight-bearing joint)*, 20 C.F.R. Ch. III, Pt. 404, App. 1, the Secretary's determination that Ms. Williams could perform her past relevant work was not supported by substantial evidence. More impor-

---

1. The claimant previously applied for DIB on October 28, 1985, alleging disability since January 15, 1980, due to diverticulitis, cataracts in both eyes, and arthritis in both knees, one ankle, and her right hand. However, Ms. Williams' earlier application for DIB—which was denied

initially and on reconsideration—is not now before the court and will not be reviewed here.

2. Prior to the second hearing, the claimant had not alleged any degree of mental impairment.

tant, because the record did not contain the kind of specific expert medical evidence envisioned by Listing 12.04 *(Affective Disorders), id.,* the court reversed the administrative decision and remanded the case for further proceedings, ordering the Secretary of Health and Human Services[3] to obtain the requisite expert input for a proper evaluation of the nature and severity of Ms. Williams' mental impairment in accordance with 20 C.F.R. § 404.1520a. *See Williams v. Shalala,* 842 F.Supp. 362, 366–67 (N.D.Ind.1993).

The Appeals Council vacated the final decision of the Secretary and, in accordance with this court's order, remanded the case for additional proceedings. A fourth hearing was held in Indianapolis, Indiana, on May 17, 1994. In a decision issued December 13, 1994, ALJ Daniel Shell found that, prior to the date the claimant was last insured, she had no physical or mental impairment that imposed significant nonexertional limitations which would have reduced her ability to perform a full range of sedentary work. The Appeals Council denied review on May 3, 1995, rendering the ALJ's decision the final decision of the Commissioner of Social Security.

Ms. Williams filed her present petition for judicial review in this court on June 12, 1995. The claimant, by counsel, filed her brief in support of summary judgment on October 31, 1995, and the Commissioner filed her response on December 15, 1995. As no reply brief has been filed, the court now rules on the claimant's motion for summary judgment.

## II. Facts

The claimant, Ms. Williams, is a fifty-eight-year-old woman who has a high school education. She was forty-seven years of age when last insured under the special earnings requirements of the Social Security Act and, thus, was a "younger person" for purposes of the present claim for Disability Insurance Benefits. Ms. Williams' work record indicates that she has held positions as a factory worker, waitress, maid, cashier, and dispatcher. Immediately prior to the alleged onset date of disability, she performed food production-type work in a factory at Lafayette, Indiana. Ms. Williams' physical problems apparently began in February 1979,[4] when she fell into a broken conveyer belt at work and tore the cartilage in her right knee. After initially being placed in traction at the hospital, and then on crutches at home, the claimant had surgery in May 1979 to remove the damaged cartilage. When Ms. Williams returned to work in July (or August) of 1979, the treating physician restricted her to sedentary work with no lifting. The company provided the claimant with a sedentary position until January 1980, when she was informed that she would no longer be allowed to sit on that particular job. Apparently, Ms. Williams was laid off because no other sedentary positions were available in the plant.[5]

---

**3.** Pursuant to section 106(d) of P.L. No. 103–296, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. Thus, the final administrative decision in the *current* appeal is that of Shirley S. Chater, Commissioner of Social Security, rather than that of the Secretary of Health and Human Services (as in the claimant's earlier appeal). *See* 42 U.S.C.A. § 405(g) (West Supp. 1995).

**4.** Although the claimant previously had undergone corrective surgery on her feet, *see* Tr. 82, 207, the present DIB claim appears to have stemmed from injuries suffered in her work-related accident of 1979.

**5.** After four administrative hearings, the facts surrounding the claimant's layoff remain less than clear. Ms. Williams' testimony at the third hearing suggests that she continued to work up to the point when the company eliminated her "sit down" job:

> [T]hey decided all of a sudden they didn't have, that wasn't a sit down job, so they took the chairs and stuff away and then I was out of a job, laid off, because they didn't have no place to put me even though I was up on seniority, they still laid me off because they didn't have any place to put me.

Tr. 107. Testimony during the fourth hearing suggests, however, that the claimant had been laid off *first* (along with other employees) and then returned from layoff to discover that the company no longer had a sedentary job for her:

ALJ: Okay. Now when you went back to work, you were there from July of 1979 through the early part of the first of 1980, and then you were laid off?

MS. WILLIAMS: Uh-huh.

ALJ: And everybody else was called back but you—

MS. WILLIAMS: Until late.

In January 1981, Ms. Williams was admitted to the hospital for evaluation of abdominal pain and diarrhea, at which time she was also diagnosed as suffering from chronic anxiety and depression.[6] When Ms. Williams was released a few days later, the discharging physician prescribed the psychotropic medication Ativan for the claimant's anxiety, but did not recommend psychiatric or psychological treatment. During the next two years, Ms. Williams allegedly attempted suicide twice—the first time by jumping from a moving car, and the second by threatening to swallow a large number of sleeping pills. She was not hospitalized after either suicide attempt, nor did she seek treatment from a mental health professional after either incident. In September 1983, Ms. Williams' family physician prescribed the psychotropic medication Tranxene for the management of her anxiety disorder. Ms. Williams now claims to be addicted to Tranxene. Tr. 116–17; see Tr. 425.

Despite functional limitations which significantly affected her ability to work—e.g., degenerative abnormalities of both knees which caused her to have difficulty standing and to fall frequently—Ms. Williams attempted to return to work on two occasions, first in 1986 and again in 1989. From May through November of 1986, the claimant worked as a cashier at the Tippecanoe Battlefield museum and gift shop, where she sat at a table and collected proceeds from the sale of souvenirs. Apparently, Ms. Williams was forced to leave her job at the gift shop when her employer insisted that she perform nonsedentary janitorial work as well. Tr. 108. Then, in the spring of 1989, the claimant worked for six weeks as a dispatcher at a local plumbing shop. Ms. Williams testified that she was laid off from this position because she was unable to write dispatch reports legibly, due to arthritis in her right hand. Tr. 109. Based on the record, it appears that the claimant has not worked since 1989. She filed the present claim for DIB on January 16, 1990, when she was fifty-two years of age.

## DISCUSSION

In its order of December 8, 1993, this court overruled the Secretary's decision and remanded the case to the Secretary for further consideration of the claimant's medical condition. Since the court entered a substantive ruling reversing the Secretary's decision and remanded the case to the Secretary for disposition (rather than retaining jurisdiction over the administrative proceedings), the order was a "sentence four" remand under § 405(g) rather than a "sentence six" remand.[7] See Sullivan v. Finkelstein, 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990); see also Shalala v. Schaefer, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993); Melkonyan v. Sullivan, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). Thus, the present appeal constitutes a new proceeding rather than a continuation of the former suit.

ALJ: —were you called back?
MS. WILLIAMS: I was called in.
ALJ: Okay. And when you got there, did you tell them?
MS. WILLIAMS: They told me that they did not have a sitting job—
Tr. 442. However, it appears to be undisputed that Ms. Williams lost her factory job at some point during 1980 due to the elimination of "sit down" positions.

6. Previously, during testing at a vocational rehabilitation center in April of 1980, a counselor at the center suggested that the claimant see a psychiatrist for treatment of her depression. Ms. Williams did not seek psychiatric help, apparently due to an inability to afford such treatment. Tr. 445.

7. The term "sentence four remand" refers to the power of the district court under § 405(g) of the Act "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary with or without remanding the cause for a rehearing." Sentence six, on the other hand, permits the court to,

> on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g) (1994). The Supreme Court of the United States has explicitly held that these two types of remands are the only kinds permitted under § 405(g). Melkonyan, 501 U.S. at 99–100, 111 S.Ct. at 2164.

However, notwithstanding that the remand order terminated the prior civil action, the Secretary was bound by the scope of this court's mandate on remand. The so-called "mandate rule," of which the "law of the case" doctrine is a corollary, *United States v. Polland*, 56 F.3d 776, 779 (7th Cir.1995), "simply embodies the proposition that 'a [trial] court is not free to deviate from the appellate court's mandate.'" *Barber v. International Bhd. of Boilermakers*, 841 F.2d 1067, 1070 (11th Cir.1988) (quoting *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 n. 2 (11th Cir.1984) (alteration added)); *see also Sibbald v. United States*, 37 U.S. (12 Pet.) 488, 492, 9 L.Ed. 1167 (1838) ("Whatever was before the court, and is disposed of, is considered as finally settled. The inferior court is bound by the decree as the law of the case, and must carry it into execution, according to the mandate."). As with all applications of the law of the case doctrine, the mandate of an appellate court on remand constitutes the law of the case only on those issues of law that were actually considered and decided by the appellate court, or necessarily to be inferred from the appellate court's disposition of the case on appeal. *Quern v. Jordan*, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358, 370 n. 18 (1979); *Polland*, 56 F.3d at 779 ("The law of the case doctrine ... prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court absent certain circumstances."); *cf. Holcomb v. United States*, 622 F.2d 937, 940 (7th Cir.1980) ("While an appellate decision establishes the 'law of the case' for all subsequent stages of the litigation, the trial court is restrained only with respect to those issues which have been considered and resolved by the appellate court.").

This court's mandate to the Secretary in the present case stated: "On remand, the Secretary will obtain the requisite expert input for an evaluation of Ms. Williams' mental impairment." *Williams*, 842 F.Supp. at 366. The order made clear that all other issues raised in the claimant's appeal of the Secretary's final determination had been considered and resolved by the court. For example, the court found that there was substantial evidence in the record to support ALJ Williams' finding that the claimant's arthritis did not meet the level of the Listings. *Id.* at 365. The ALJ thus was not free on remand to revisit the issue of the plaintiff's physical condition, at least to the extent it related to a determination of disability under Listing 1.03. Therefore, it was error for ALJ Shell to take testimony and to make a new finding that the claimant's arthritis in her lower extremities did not meet or equal the level of the Listings. Nevertheless, because the finding concurs with this court's determination in its earlier order that substantial evidence supported the previous ALJ's similar finding, *id.*, the error was harmless.

The court also considered and resolved the discrepancy in the ALJ's determinations regarding Ms. Williams' ability to perform her past relevant work: the court concluded that ALJ Williams' finding that "[a]s of December 31, 1984, the claimant was able to perform her past relevant work as a cashier and dispatcher" was in direct conflict with his determination that Ms. Williams' jobs as cashier and dispatcher during 1986 and 1989, respectively, did not constitute substantial gainful activity. *Id.* at 367. Because neither job was past relevant work,[8] and because ALJ Williams had acknowledged in his decision that the claimant was physically incapable of doing her pre–1980 past relevant work as a factory worker or maid, the ALJ's finding that Ms. Williams could perform her past relevant work was clearly insupportable. *Id.* Thus, the court's mandate foreclosed any further determination on remand as to the claimant's ability to perform her past relevant work—*if the claimant was physically unable to return to her past relevant work, her mental impairment could have no relevance.* The *sole* issue left open for reconsideration on remand was whether, *in light of*

---

**8.** As the court's order noted, both the cashier's job (in 1986) and the dispatcher's position (in 1989) were "unsuccessful attempts at work" and thus did not constitute substantial gainful activity. *Williams*, 842 F.Supp. at 366. Therefore, the claimant's insured period ended effective December 31, 1984, the date when Ms. Williams last satisfied the special earnings requirement of the Act for purposes of Disability Insurance Benefits.

*the degree of her mental impairment,* the claimant had the ability to perform other work available in significant numbers in the national economy. Accordingly, it was error for ALJ Shell to take further testimony and to make a finding as to the claimant's ability to perform her past relevant work. However, because the ALJ ultimately concurred with this court's clarification of the issue of past relevant work, the error was harmless and the claim need not be remanded for another hearing on that basis.

Ms. Williams presents two issues for review in this court. First, the claimant contends that, because the ALJ prejudged the outcome of her case, she was denied the full and fair administrative hearing required by due process. Second, the claimant contends that there is not substantial evidence to support the Commissioner's finding that she was not disabled at any time through December 31, 1984, when she last satisfied the special earnings requirement of the Act for purposes of Disability Insurance Benefits.

### *I. Due Process*

Because the question of whether the ALJ prejudged the outcome of the claimant's hearing would be conclusive for purposes of the present appeal if answered in the affirmative—the claimant is entitled to have the evidence evaluated by an unbiased adjudicator *even if* the Commissioner's decision is supported by substantial evidence in the record—the court must first address the claimant's due process claim. *See Ventura v. Shalala,* 55 F.3d 900, 901–02 (3d Cir.1995); *Hummel v. Heckler,* 736 F.2d 91, 95 (3d Cir.1984). Therefore, it is the conduct of the claimant's fourth hearing, and not the content of the evidence adduced, which is the subject of the court's initial focus.

The Social Security Act provides DIB claimants the right to a hearing in which witnesses may testify and evidence may be received. 42 U.S.C. § 405(b)(1) (1994). Although such agency proceedings are by design informal, due process nonetheless demands that any hearing afforded the

claimant be full and fair. *Perales,* 402 U.S. at 401–02, 91 S.Ct. at 1427. Clearly, it is axiomatic that an unbiased and impartial adjudicator is essential to the idea of a fair hearing. Moreover, "the due process requirement of an impartial decisionmaker is applied more strictly in administrative proceedings than in court proceedings because of the absence of procedural safeguards normally available in judicial proceedings." *Ventura,* 55 F.3d at 902; *see Hummel,* 736 F.2d at 93.

The Social Security regulations provide that a claimant must bring any objections to an ALJ's prejudice or partiality to the attention of the ALJ at the earliest opportunity. 20 C.F.R. §§ 404.940, 416.1440 (1995). If the ALJ chooses not to withdraw, the claimant may then present the objections to the Appeals Council.[9] *Id.* Accordingly, this court understands the regulations to require that the claimant object during the hearing as a prerequisite to raising the issue on appeal. Although the claimant now cites several comments by the ALJ during the hearing which, in her opinion, show that the ALJ's prejudgment of the outcome is "manifest from his opening statement until his signature on the decision," Plaintiff's Brief at 8, the only reference in the record that could be construed to be an objection to the ALJ's prejudice occurred during the ALJ's reexamination of Dr. Jarmon, the impartial mental health expert:

> ALJ SHELL: —the last sentence, it says, it's clear to this Judge that Mrs. Williams has presented more than enough evidence that she suffers from a mental impairment to trigger the special procedures required of the Secretary in such cases. The Secretary is required to complete a standard document. This form was completed by the ALJ without the assistance of an expert in his opinion to his decision. Are you familiar with a Psychological or PFRT, the Psychological Performance Form?
>
> DR. JARMON: Yes.
>
> ALJ SHELL: Apparently the Administrative Law Judge was not competent enough

---

9. Where the Appeals Council has denied review, the claimant certainly is entitled to raise a claim of prejudice or partiality in the petition for judicial review—provided, of course, that the requisite objection was made during the administrative hearing.

to complete the form without the assistance of a [sic] expert. Is there enough evidence in this file—

COUNSEL: I think I should object at this point but—

ALJ SHELL: You can object if you want. You can object if you want.

Tr. 452. Nevertheless, since the sole objection occurred late in the hearing (and because it is not entirely clear from the record what counsel was objecting to), the court will assume for purposes of discussion that counsel's objection manifests a cumulative dissatisfaction with the tone of the ALJ's comments during the hearing, and thus satisfies the requirement of the regulations that the claimant notify the ALJ of any objections to his prejudice or partiality in order to raise the issue on appeal.

■ While a DIB claimant is entitled to have the evidence evaluated by an unbiased ALJ, in order to remand a claim on the basis of allegations of prejudice, the ALJ's statements, taken as a whole, must evidence an unalterable opinion—a closed mind on the merits of the claimant's case. *See Throckmorton v. National Transp. Safety Bd.*, 963 F.2d 441, 445 (D.C.Cir.1992). Moreover, "[p]rejudice such as will disqualify a judicial officer (whether judge or hearing examiner) refers to prejudgment based on information obtained outside the courtroom, rather than to rulings, even if hasty or errant, formed on the basis of record evidence and other admissible materials and considerations." *Pearce v. Sullivan*, 871 F.2d 61, 63 (7th Cir.1989); *see Waring v. Delo*, 7 F.3d 753, 759 (8th Cir.1993) ("Neither does [mild judicial intemperateness] overcome the presumption of judicial impartiality."); *United States v. Walker*, 920 F.2d 513, 517 (8th Cir.1990) ("Even if a few of the [judge's] comments may have been unnecessary, a few improper comments do not merit reversal."). This is not to say, however, that rudeness and hostility toward the claimant's counsel will be overlooked on judicial review. *See, e.g., Ventura*, 55 F.3d at 902–03; *Rosa v. Bowen*, 677 F.Supp. 782, 783 (D.N.J.1988). The test is whether "the administrative law judge's deportment so undermine[d] his finding," *Pearce*, 871 F.2d at 64, that it "prevented claimant from receiving

a full and fair hearing" on the merits of the claim. *Ventura*, 55 F.3d at 904.

■ In the present case, the ALJ's conduct was frequently less than exemplary. For example, early in the hearing during his recitation of the procedural history of Ms. Williams' DIB claim, ALJ Shell made the following comments:

ALJ SHELL: Okay. Well, okay. We're back again because the District Court feels that Judges are not capable of filling out a PRTF Form. The PRTF Form is an assistive device to help the Judge to figure out how to place a mental impairment on the claimant. And that's the sole purpose of the PRTF Form. And the Judge, very clearly in my opinion, can do it without, and the District Court may have a different idea. But this time the District Court is the winner, and the District Court is going to get a psychological assessment from a psychologist so that he can assist me in filling out the PRTF Form.

COUNSEL: Okay.

ALJ SHELL: In my opinion, the prior decision was correct, and it's like—

Tr. 405. Although the foregoing remarks clearly indicate that the ALJ thought this court's remand unnecessary, they do not in themselves show that the ALJ breached his duty to develop the record fully and fairly. Immediately following this exchange, counsel described his client's addiction and the side effects caused by her medication for anxiety. The ALJ's response to counsel was "Okay." Tr. 406. Thereafter, the ALJ noted, "So that we're on the same wave length, the mental information that I'm most interested in, is anything prior to 12/31/84." *Id.* Later during the hearing, the ALJ reminded the claimant, "[M]a'am, I want you to understand I'm not trying to be impolite, but I need to focus on the evidence before 1984, not what's going on nowadays." Tr. 433. These statements do not connote a "closed mind" such that the claimant's case must be remanded for a hearing before a different ALJ.

As discussed earlier, the ALJ stated at one point: "Apparently the Administrative Law Judge was not competent enough to complete the form without assistance of a [sic] expert."

Tr. 452. Following the objection by counsel, the ALJ conducted the following inquiry:

ALJ SHELL: Okay. Doctor, I'd like you to assist me in going through the Psychiatric Review Technique Form and ask if there is evidence that the claimant meets or equals any psychological impairment?

DR. JARMON: Okay. Where would you like to start?

ALJ SHELL: First of all, let's identify what psychological problem the claimant may have based upon what we have in the file. Anxiety and depression would refer to which listing number?

DR. JARMON: 12.06 would be the listing for anxiety, 12.04 would be the listing for affective disorders.

ALJ SHELL: Okay. Under—on page 4 of the PRTF Form—

DR. JARMON: Yes.

ALJ SHELL: 12.04, affective disorder.

DR. JARMON: Yes.

ALJ SHELL: Is—I would like you to go down through 1, 2, 3 and 4, and tell me if there is anything present, if it's absent or insufficient evidence.

DR. JARMON: Okay. Well, the first comment that I would want to make is that up at the very top of the listing, it indicates that there's either no evidence or a disturbance of mood, accompanied by a full or partial manic or depressive syndrome as evidence by at least one of the following.

ALJ SHELL: Okay.

DR. JARMON: Okay. I don't believe that there is a full or partial manic or depressive syndrome.

ALJ SHELL: Okay.

Tr. 453–54. Again, this discussion suggests that, despite the impropriety of the comment cited by the claimant, the ALJ did not prejudge the case such that the claimant was denied a full and fair hearing on the merits.

■ At the conclusion of the ALJ's reexamination of the medical expert, the following discussion ensued:

ALJ SHELL: All right. Now, in Exhibit 79 at page 12, Dr. Sharp indicates that Mrs. Williams has presented very persuasive evidence of a mental impairment.

That the record does not contain the kind of specific expert medical to support the type of in depth analysis envisioned by the regulation. Dr. Jarmon, how is it possible to find any sort of evidence other than what's in the file?

DR. JARMON: Could you recite that again. I didn't catch it.

ALJ SHELL: It's Exhibit 79, page 12, beginning at the top of the page. Mrs. Williams has presented very persuasive evidence of a mental impairment, yet the record does not contain the kind of specific medical evidence to support the in—the type of in depth analysis envisioned. It goes on to say the Williams [sic] do not have the funds to afford psychiatric attention. Is there any way possible that a psychiatric test or evaluation today can tell me anything about the condition of the claimant in 1984 or before?

DR. JARMON: I think that would be very difficult.

ALJ SHELL: If not impossible?

DR. JARMON: Yeah.

Tr. 457. While the foregoing remarks indicate a certain degree of impatience with this court's order remanding the claim, the ALJ nonetheless complied with the court's mandate that he obtain expert input in evaluating Ms. Williams' mental impairment on remand. And although the claimant objects to what she perceives to be the ALJ's sarcasm (*e.g.*, "Dr. Sharp"), *see* Plaintiff's Brief at 3, a few improper comments by an administrative law judge do not constitute denial of due process, nor do they warrant remanding for a hearing before a different ALJ. *See Walker*, 920 F.2d at 517; *Pearce*, 871 F.2d at 64.

The claimant's other argument under the rubric of due process—that ALJ Shell disregarded the opinions of the medical expert to arrive at a predetermined conclusion—lacks support in the record. In any event, the question of whether and to what extent the ALJ was bound by the opinion of a nonexamining medical professional is an issue more appropriately addressed in a discussion of the requirements under the Listings to establish disabling mental impairment. Therefore, having considered the claimant's allega-

tions of prejudgment bias, this court finds that the claimant's argument that she was denied due process by the ALJ's prejudgment of her case is without merit.

## II. Residual Functional Capacity to Perform Sedentary Work

To qualify for DIB, the claimant has the burden of proving that she is "disabled" within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5) (1994). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1994). "Substantial gainful activity" means work activity, done for pay or profit, which involves significant physical or mental activities. 20 C.F.R. § 404.1572 (1995). The Commissioner employs a five-step procedure to determine whether a claimant is eligible for disability benefits within the meaning of the Act. 20 C.F.R. § 404.1520 (1995). The Court of Appeals for the Seventh Circuit has succinctly described this sequential inquiry:

> The Secretary must determine in sequence: (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing any work in the national economy. Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job.

*Pope v. Shalala,* 998 F.2d 473, 477–78 (7th Cir.1993) (citations omitted).

Applying the five-step procedure for determining disability at Ms. Williams' fourth hearing, ALJ Shell found as follows:

1. The claimant satisfied the special earnings requirements of the Social Security Act on the alleged disability onset date, January 15, 1980, and continued to satisfy those requirements through December 1984.

2. The claimant has not performed substantial gainful activity since the alleged disability onset date.

3. Prior to the date last insured, the claimant had severe arthritis affecting the lower extremities. The severity of that impairment did not meet or equal the degree of severity described in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's subjective complaints of total disability prior to 1985 are not supported by objective medical evidence or clinical findings and cannot be considered credible when evaluated under the guidelines of the *Pope* decision and 20 C.F.R. § 404.1529. Additionally, the claimant's allegations and subjective complaints are disproportionate and less than credible.

5. Prior to the date last insured, the claimant had the functional capacity to perform the full range of sedentary work. She had no physical or mental impairment which imposed significant nonexertional limitations that would reduce her ability to perform the full range of sedentary work.

6. Prior to the date last insured, the claimant was unable to perform her past relevant work.

7. Through the date last insured, the claimant was less than fifty years old and was considered to be a "younger individual."

8. The claimant has a high-school education.

9. The claimant does not have "transferable" work skills within the meaning of the Social Security Act.

10. Section 404.1569 of Regulations No. 4 and Rule 201.21 of Table No. 1, Appendix 2, Subpart P, Regulations No. 4 direct a conclusion that, considering the claimant's residual functional capacity and vocational profile, she was "not disabled" at any time through December 31, 1984, when she last satisfied the special earnings requirements

of the Social Security Act for Title II disability purposes.

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through December 31, 1984, the date last insured.

Tr. 391–92.

### A. Standard of Review

■ The Social Security Act itself provides the pertinent standard of review: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C.A. § 405(g) (West Supp.1995); *see Pope v. Shalala,* 998 F.2d 473, 480 (7th Cir. 1993). Thus, this court may not substitute its judgment for that of the Commissioner by reevaluating the facts or reweighing the evidence presented at the administrative hearing, nor will it determine whether Ms. Williams actually was disabled. *See Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir.1995); *Cass v. Shalala,* 8 F.3d 552, 555 (7th Cir.1993); *Young v. Secretary of Health & Human Servs.,* 957 F.2d 386, 388 (7th Cir.1991); *Stuckey v. Sullivan,* 881 F.2d 506, 508 (7th Cir.1989).

■ Absent an error of law by the Commissioner, this court must affirm her decision if there is substantial evidence to support it. *Wolfe v. Shalala,* 997 F.2d 321, 322 (7th Cir.1993); *Herr v. Sullivan,* 912 F.2d 178, 180 (7th Cir.1990). Substantial evidence is that quantum of relevant evidence which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971) (citation omitted); *see Diaz,* 55 F.3d at 305; *Farrell v. Sullivan,* 878 F.2d 985, 990 (7th Cir.1989). It may be less than a preponderance of the evidence. *See Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131, 140 (1966); *Young,* 957 F.2d at 389. Substantial evidence may also be less than the weight of the evidence, and a finding may be supported by substantial evidence even if a reviewing court might conceivably have reached a different conclusion. *Delgado v. Bowen,* 782 F.2d 79, 83 (7th Cir. 1986). Finally, an administrative decision is not subject to reversal merely because substantial evidence would also have supported the opposite decision. *See Consolo,* 383 U.S. at 620, 86 S.Ct. at 1026.

### B. Mental Impairment

The claimant contends that the Commissioner's decision that she was not "disabled" under the Act is not supported by substantial evidence. Although the Commissioner correctly followed the five-step procedure in evaluating the disability claim, Ms. Williams disputes the Commissioner's determination on the third step. Specifically, the claimant argues that, between the alleged onset date and the date she last satisfied the special earnings requirement, she had a mental impairment pursuant to the Listings which entitled her to Disability Insurance Benefits.

■ Under the Social Security regulations, the Commissioner is required to consider all of the claimant's statements about symptoms, together with any description the claimant, her physician(s), her psychologist(s), or other persons may provide about how the symptoms affect the claimant's activities of daily living and her ability to work. 20 C.F.R. § 404.1529(a) (1995). However, the claimant's statements about her own symptoms cannot by themselves establish disability; there must be medical signs and laboratory findings which show that the claimant has a medical impairment(s) which could reasonably be expected to produce the symptoms alleged, and which, when considered with all of the other evidence of record, would lead to a conclusion that the claimant is disabled pursuant to the Act. *Id.* If the medical signs and/or laboratory findings confirm that the claimant has a medically determinable impairment(s) that could reasonably be expected to produce the symptoms alleged, the Commissioner must then evaluate the intensity and persistence of the symptoms in order to determine how the claimant's symptoms limit her capacity for work. *Id.* at § 404.1529(c)(1) (1995). Finally, the Commissioner must consider whether there are inconsistencies in the evidence, and the extent to which there are conflicts between the claimant's statements and the rest of the evidence of record. *Id.* at § 404.1529(c)(4).

To the extent that the claimant's alleged functional limitations and restrictions due to her symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, the claimant's symptoms will be adjudged to diminish her capacity for basic work activities. *Id.*

### 1. Medical Expert's Testimony

■ Consistent with this court's remand order, ALJ Shell retained an impartial mental health expert to assist him in assessing the nature and severity of the claimant's alleged mental impairment at the hearing on May 17, 1994. Psychologist David Jarmon, Ph.D., who had no opportunity to independently examine the claimant, based his testimony at the hearing on evidence contained in the record, including the transcripts of the claimant's three prior hearings.

During his reexamination of Dr. Jarmon, ALJ Shell requested that the psychologist assist him in completing the Psychological Review Technique Form. The ALJ first asked Dr. Jarmon to consider the claimant's mental impairment under Listing 12.04 (*Affective Disorders*), 20 C.F.R. Ch. III, Pt. 404, App. 1. As a preliminary matter, Dr. Jarmon observed that under Listing 12.04, a claimant's condition must be accompanied by "a full or partial manic or depressive syndrome." On the basis of his review of the record, Dr. Jarmon concluded, "I don't believe that there is a full or partial manic or depressive syndrome [in Ms. Williams' case]." Tr. 454. However, because Dr. Jarmon admitted that the claimant did manifest "some depressive symptomatology," *id.*, the ALJ urged him to review the individual symptoms and effects under Listing 12.04. Tr. 455. While a detailed discussion of the criteria under Listing 12.04 is unnecessary here, it is helpful to understand that the Listing is comprised of two parts, labeled 'A' and 'B'. In order to meet the requirements of Listing 12.04, a claimant must satisfy *both* parts. Although Dr. Jarmon felt that Ms. Williams met part 'A' based upon a January 1981 diagnosis of "chronic depression," the functional limitations resulting from her depression failed to satisfy the degree required under part 'B'. *See* Tr. 455. Thus, Dr.

Jarmon concluded that her mental impairment did not meet Listing 12.04.

Next, Dr. Jarmon assessed the degree and severity of the claimant's mental impairment under Listing 12.06 (*Anxiety Related Disorders*), 20 C.F.R. Ch. III, Pt. 404, App. 1. Listing 12.06 is subdivided into parts 'A', 'B', and 'C', and a claimant must satisfy either parts 'A' and 'B' *or* parts 'A' and 'C' to meet the requirements of the Listing. The mental health expert testified that although the claimant again did not have a "specific cluster or syndrome" under Listing 12.06, she likely satisfied part 'A' of the Listing on the basis of the chronic anxiety diagnosis in January 1981. Tr. 456. However, as with Listing 12.04, *supra*, Dr. Jarmon determined that the functional limitations resulting from the claimant's anxiety disorder failed to satisfy the degree required under part 'B' of Listing 12.06. *Id.* Although Dr. Jarmon did not testify as to the claimant's ability to satisfy part 'C' of the Listing, the absence of testimony here is understandable in light of the evidence of record. Part 'C' of Listing 12.06 requires that the claimant's anxiety related disorder result in a "complete inability to function independently outside the area of one's home," a level of disability never alleged by the claimant. Thus, because Ms. Williams failed to satisfy either part 'B' or part 'C', Dr. Jarmon concluded that the claimant's mental impairment did not meet Listing 12.06.

■ During his examination of Dr. Jarmon, counsel raised the argument that Ms. Williams has become disabled due to the adverse side effects of the psychotropic drug Tranxene, which the claimant had used for eleven years by the time of the fourth administrative hearing:

COUNSEL: I, I can't tell because I'm, you know, I'm not sitting in your position. All I'm saying is I read here that these adverse reactions are from Tranxene. Now I see these things that she testifies have taken place in her life. Now, I don't know whether they're from psychiatric condition that existed prior to the taking of the medication or whether they're from the medication themselves, because quite a few of them are the same and one in the same.

ALJ SHELL: Okay. You cannot tell—state your question again.

COUNSEL: I can't tell whether they're from a prior existing psychiatric condition or whether they're from a drug induced condition.

ALJ SHELL: Dr. Jarmon, is there any way that you or anybody else can tell the difference?

DR. JARMON: No, sir. And you can—well, I think one way to tell the difference would be to get her into adequate psychiatric treatment, get her off this medication which is alleged to be creating this problem for her and get her on an appropriate medication such as an anti-depressant medication, and see if there's improvement in her condition.

Tr. 458–59. When counsel pressed Dr. Jarmon on the question of whether Ms. Williams' symptoms of mental impairment result from a previously existing psychiatric condition or a drug-induced condition, the following exchange took place:

DR. JARMON: ... And I think you're making the same point that I'm making, because you're saying that you think that her problems are the result of the medication that she's taking. Well that means that she must be taking the wrong medication.

COUNSEL: I agree. I don't know—

DR. JARMON: But I'm not sure that that leads us to a determination of disability.

Tr. 461. The Social Security regulations make clear, however, that "depressive syndrome" resulting from substance addiction disorders should be evaluated under Listing 12.04, while "anxiety disorders" caused by substance addiction disorders must be evaluated under Listing 12.06. *See* 20 C.F.R. Ch. III, Pt. 404, App. 1, Listing 12.09 (*Substance Addiction Disorders* ). Thus, the question of whether mental impairment results from a previous psychiatric condition or from a drug-induced condition is irrelevant for purposes of determining disability under the Act.

## 2. *Commissioner's Decision*

Ms. Williams argues that the ALJ filled out the PRTF "with total disregard for anything the doctor said" during testimony at the hearing. Plaintiff's Brief at 5–6. Specifically, the claimant contends that the ALJ ignored and misstated the evidence to arrive at a predetermined conclusion:

The doctor said *moderate* restriction of daily activities, the ALJ puts down *slight;* The doctor said *moderate* limitation in maintaining social functioning, the ALJ puts down *none;* The doctor said deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere) are *often,* the ALJ puts down *never.*

*Id.* As with the claimant's contention that the ALJ's statements show prejudgment of her case, the argument that ALJ Shell ignored and misstated the evidence to arrive at a predetermined conclusion lacks merit. Unlike the claim of prejudgment addressed above, however, the court's decision here does not rest solely on due process considerations.

While it undoubtedly true that an "ALJ must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it," *Knight v. Chater,* 55 F.3d 309, 313 (7th Cir.1995), the question of whether ALJ Shell erred by deviating from Dr. Jarmon's medical opinions is irrelevant here. Even if the ALJ had adopted Dr. Jarmon's opinions as to the degree of functional limitation, the psychologist's findings fail to show the degree of limitation necessary to satisfy the Listings. A claimant's restrictions of daily activities and degree of difficulty in maintaining social functioning must at a minimum be "marked" restrictions in order to satisfy the Listings—a finding that the restriction is "moderate" does not suffice. Additionally, a claimant's deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner must be "frequent" occurrences to reach the level required by the Listings—a finding of "often" fails to show the degree of limitation necessary to meet

the Listings. Thus, the argument that ALJ Shell erred by rejecting Dr. Jarmon's assessment of the degree of functional limitation offers no refuge to Ms. Williams, since the medical expert's conclusions, even if taken as true, do not establish disability under the Act.

Moreover, the ALJ's determination that Ms. Williams' mental impairment did not render her "disabled" under the Listings is supported by substantial evidence. Under the Social Security regulations, "a mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508 (1995). In the present case, no formal diagnosis of a mental health impairment was ever made, nor was the claimant ever treated for a mental impairment (aside from the anxiety medication prescribed by an internist and by Ms. Williams' family doctor). Thus, notwithstanding the claimant's self-described symptoms, there is substantial evidence in the record to support a finding that her mental impairment prior to December 31, 1984, did not reach the level necessary to satisfy the Listings.

### C. Sedentary Work

Finally, the claimant disputes the Commissioner's determination as to the final step of the five-step procedure—that she remained capable of performing other work. As discussed above, it has previously been established that Ms. Williams was physically incapable of returning to her past relevant work. Therefore, once the ALJ determined on remand that the claimant's mental impairment did not reach the level necessary to satisfy the Listings, the burden shifted to the Commissioner to show that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her RFC and "age, education, and work experience." 20 C.F.R. § 404.1505(a) (1995). To assist the ALJ, the regulations classify jobs in the national economy as "sedentary," "light," "medium," "heavy," and "very heavy." *Id.* at 404.1567. On the basis of the factors listed above, the ALJ determined that, prior to the date last insured, Ms. Williams had the residual functional capacity to perform the full range of sedentary work. Tr. 392.

"Sedentary work" is defined by the regulations as activity which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a) (1995). The regulations also note that "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* Thus, "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.* In the present case, the record supports the ALJ's finding that Ms. Williams was able to perform sedentary work. There is substantial evidence that, prior to the date last insured, the claimant retained the physical ability to perform sedentary activities; nothing in the record suggests that the claimant had a nonexertional limitation—*i.e.,* a mental impairment—which was severe enough to compromise her ability to engage in the same.

The claimant's allegations of mental disability amount to little more than a subjective description of her own symptoms—no formal diagnosis of major depression has ever been made. In 1981, when the claimant was admitted to the hospital for evaluation of abdominal pain and diarrhea, the discharge summary noted that Ms. Williams "*admits* to chronic anxiety and depression." Tr. 317 (emphasis supplied). The internist apparently prescribed the medication Ativan based upon the claimant's description of her own symptoms, noting that "[b]ecause of a strong *suspicion* of underlying anxiety and depression, [the patient] was also begun on Atipen [sic] 50 mg. qhs." Tr. 318 (emphasis supplied). More important, the hospital's physical examination form stated that "[t]he patient is an obese, *somewhat* anxious, and depressed white female *in no distress.*" Tr. 317 (emphasis supplied). Although the claimant continued to receive medication for her alleged mental disability subsequent to her 1981 hospital visit, the record indicates that the prescriptions for psychotropic medication (*i.e.,* Tranxene) were written by a family doctor, again presumably on the basis

of the claimant's statements rather after an adequate and accurate diagnosis by a mental health professional.

In April 1980, during testing at a vocational rehabilitation center, a vocational counselor suggested that the claimant see a psychiatrist for treatment of her depression. However, despite the counselor's recommendation (and the claimant's own statements that depression has played a major role in her life since the onset of disability), the record shows that Ms. Williams has never sought treatment for her alleged mental impairment. Such treatment is often available at relatively low cost to the indigent through community mental health centers. And while the testimony of the claimant and her husband offers descriptive evidence as to the effect of the claimant's anxiety and depression on her daily activities, such testimony—without more—does not establish that the claimant's nonexertional limitations rendered her unable to perform sedentary work activities prior to the date last insured.

## CONCLUSION

It is unfortunate that it has taken six years to process Ms. Williams' application for benefits to the present conclusion. Nevertheless, having thoroughly reviewed the lengthy record in this case, the court concludes that there is substantial evidence to support the Commissioner's decision that the claimant is not entitled to a period of Disability Insurance Benefits. Thus, for the reasons described herein, the claimant's motion for summary judgment is **DENIED,** and the Commissioner's final decision is **AFFIRMED. IT IS SO ORDERED.**